1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  JOSE F. DIAZ,                      )   NO. CV 05-04964-MAN
                                       )
12                  Plaintiff,         )
         v.                            )   MEMORANDUM OPINION AND ORDER
13                                     )
                                       )
14  MICHAEL J. ASTRUE,                 )
    Commissioner of the               )
15  Social Security Administration,    )
                                       )
16                  Defendant.         )
    _____)

17

18       Plaintiff filed a Complaint on July 8, 2005, seeking review of the

19  denial by the Social Security Commissioner ("Commissioner")[1] of

20  Plaintiff's claim for Disability Insurance Benefits ("DIB").  On October

21  4, 2005, the parties consented to proceed before the undersigned United

22  States Magistrate Judge, pursuant to 28 U.S.C. § 636.  The parties filed

23  a Joint Stipulation ("JS") on May 3, 2006, in which:  Plaintiff seeks an

24

25  _____

26       [1]   Michael J. Astrue became the Commissioner of the Social
    Security Administration on February 12, 2007.  Pursuant to Rule 25(d)(1)
27  of the Federal Rules of Civil Procedure, Michael Astrue should be
    substituted in place of Commissioner Joanne B. Barnhart as the Defendant
28  in this action.  No further action need be taken to continue this suit
    by reason of the last sentence of Section 205(g) of the Social Security
    Act, 42 U.S.C. § 405(g).

order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case for further appropriate proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' JS under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for DIB on July 28, 2003. (Administrative Record ("A.R.") 105-07.)  Plaintiff claims to have been disabled since April 18, 2002, due to:  pain in his knees, feet, shoulders, arms, hands, and neck; loss of hearing; allergies; and dizziness. (A.R. 117.)  Plaintiff has past relevant work experience as a die cast machine operator. (A.R. 118, 128-29, 139.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 61-62, 64-67, 69-73.)  On January 10, 2005, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Kevin M. McCormick ("ALJ"). (A.R. 28-60.)  On February 28, 2005, the ALJ denied Plaintiff's DIB claim. (A.R. 16-27.)   On June 16, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 8-13.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

1    (A.R. 26.)  The ALJ determined that Plaintiff had "severe" impairments,
2    taken singularly or in combination, of:  tinnitus in the right ear with
3    related vertigo complaints; occipital headaches; hypertension; bilateral
4    meniscal knee injuries; mild disc bulges in the cervical spine without
5    cord compression; and chronic sinusitis.   (A.R. 20-21, 26.)   He
6    concluded that Plaintiff's impairments did not meet or equal one of the
7    listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (A.R.
8    26.)

9

10       The ALJ further concluded that Plaintiff's complaints of disabling
11   pain and other symptoms generally were not credible.  (A.R. 24-25, 27.)
12   He opined that Plaintiff:  could lift 20 pounds occasionally and ten
13   pounds frequently; could stand, sit, or walk up to six hours each,
14   cumulatively, in an eight-hour workday; could occasionally climb; must
15   avoid overhead lifting; could not be exposed to concentrated fumes,
16   odors, dusts, or gas particles; and must avoid work hazards such as
17   moving machinery and heights.  (A.R. 24, 27.)

18

19       The ALJ found that Plaintiff was 46 years old at the time of his
20   alleged onset of disability, had a second grade education in Mexico, was
21   both able to communicate and literate in English, and had no
22   transferable skills.[2]   (A.R. 20, 25-26.)   Based on his residual

23   ────────────────────

24       [2]   Plaintiff was born on February 19, 1956, and was 49 years old
     at the time of the hearing decision.  (A.R. 105, 108, 125.)

25
26       In addition, although Plaintiff alleged he was both unable to
     communicate and illiterate in English, he completed his citizenship test
     in English and became a United States citizen.  (A.R. 25.)   The ALJ
27   noted that immigration statutes and regulations require a basic ability
     to communicate, and literacy, in English.  (*Id.*)   Thus, the ALJ found

28
                                      3

functional capacity finding, the ALJ determined that Plaintiff could not perform his past relevant work.  (A.R. 25, 27.)  Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform work such as a product packer, assembler, and gluer.[3]  (A.R. 26-27.)  Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Social Security Act.  (A.R. 27.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a

---

that Plaintiff was both able to communicate and literate in English. (*Id.*)

[3]    The vocational expert, Dr. Martin Brodwin, testified that a hypothetical individual with Plaintiff's age, education, vocational background, and residual functional capacity could not perform Plaintiff's past relevant work.  (A.R. 45-48.)  However, Dr. Brodwin opined that the individual could perform other work as a product packer, assembler, and gluer.  (*Id.*)

whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1039-40; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges the following four issues: (1) the ALJ erred in his assessment of Plaintiff's residual functional capacity; (2) the ALJ erred in his evaluation of Plaintiff's temporomandibular joint ("TMJ") disorder and its impact on Plaintiff's ability to work; (3) the ALJ erred in relying on the vocational expert's response to an incomplete hypothetical question; and (4) the ALJ improperly found Plaintiff's subjective symptom allegations to be not credible.

///
///
///
///

A.   **The ALJ Erred In Assessing Plaintiff's Residual Functional Capacity.**

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen, 80 F.3d at 1279; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).  These same rules govern the ALJ's consideration of the opinions of examining physicians.  Lester, 81 F.3d at 830.

The opinions of nonexamining physicians, including medical experts and state agency reviewing physicians, may constitute substantial evidence upon which an ALJ may rely, when they are properly supported.  See, e.g., Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); Saelee, 94 F.3d at 522 (the opinion of a nontreating, nonexamining physician may serve as substantial evidence only when other evidence of record supports the reviewing physician's findings).  However, the opinion of a

6

nonexamining, reviewing physician normally is entitled to less deference than that of a treating or examining physician, as the former has not had the opportunity to conduct an independent examination of the claimant and has not treated him or her. Andrews, 53 F.3d at 1040-41. Standing alone, the opinion of a nonexamining physician cannot constitute substantial evidence to justify rejecting the opinion of either a treating or examining physician. Morgan, 169 F.3d at 602. "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the records." Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996).

Plaintiff contends that the ALJ erred in assessing Plaintiff's residual functional capacity. Specifically, he argues that the ALJ erred in rejecting the opinion of Dr. L.V. Alonso, an internal medicine consultative examiner, and Dr. Alonso's finding that Plaintiff was limited in his ability to stand and/or walk to four hours in an eight-hour workday. In addition, Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Robert Rivera, Plaintiff's treating physician. Plaintiff complains that the ALJ improperly failed to give any weight to Dr. Rivera's opinion concerning Plaintiff's ability to work.

*Dr. Alonso's Opinion:*

On September 30, 2003, Dr. Alonso administered an internal medicine consultative examination. (A.R. 369-74.) He noted that he had reviewed

1   records from Plaintiff's treating physician, Dr. Stokes, which included:

2   March 2003 MRIs of both of Plaintiff's knees, indicating that Plaintiff

3   suffered from medial meniscal tears in each knee; and an MRI of

4   Plaintiff's cervical spine, which showed that he had "mild to moderate

5   central, and left paracentral disc herniation at C6-C7, with mild

6   posterior bulges at other levels, C3-4, C4-5, and C5-6 without

7   herniation." (A.R. 372.)  Dr. Alonso also reviewed treating physician

8   medical records, including a CT scan, indicating that Plaintiff likely

9   has pansinusitis, hearing loss in the left ear, and some otosclerosis in

10  the right ear. (*Id*.)  Based on these objective medical findings as well

11  as the results of his own examination, Dr. Alonso concluded that

12  Plaintiff:  would have difficulty with prolonged standing greater than

13  four hours in an eight-hour workday; and would be limited in his ability

14  to walk to about three to four hours in an eight-hour workday. (A.R.

15  373.)

16

17       Dr. Keith Quint, a state agency, nonexamining physician, completed

18  a check-the-box Physical Residual Functional Capacity Assessment form on

19  January 15, 2004. (A.R. 378-85.)  Dr. Quint opined that, based on his

20  review, Plaintiff would be able to stand or walk for about six hours in

21  an eight-hour workday. (A.R. 379.)  In finding a less severe limitation

22  as to Plaintiff's ability to stand or walk than found by Dr. Alonso, Dr.

23  Quint stated there were "credibility issues," notwithstanding the fact

24  that he had not had any face-to-face interaction with Plaintiff. (A.R.

25  383.)  Rather, Dr. Quint based this finding on a statement made by Dr.

26  Moldawer, an orthopedic examining physician. (A.R. 384.) Specifically,

27  in a September 4, 2003 opinion, Dr. Moldawer diagnosed Plaintiff as

28

8

"malingering," because:    there were "no objective findings on examination to substantiate [Plaintiff's] subjective complaints"; and Plaintiff's complaints "appear to be dramatized and exaggerated and may be related to drug-seeking behavior related to his" use of prescribed narcotic pain medications.  (A.R. 323-24.)  Dr. Moldawer further opined that Plaintiff had not sustained *any* knee injury and was not entitled to received knee-related treatment, because Plaintiff did not state any complaints about his knees when examined that day or earlier, on October 3, 2002.   (A.R. 324.)   Dr. Quint apparently concurred in these statements by Dr. Moldawer, given his finding that Plaintiff was not credible.  (A.R. 384-85.)

    In rejecting Dr. Alonso's opinion, the ALJ agreed with Dr. Quint, stating, in pertinent part:

> I do not accept the part of Dr. Alonso's opinion which states that [Plaintiff] has a reduced ability to walk, only up to four hours.  (Exhibit 7F/5).  I give greater weight to the reasoned conclusion of the DDS physician [Dr. Quint] who had the entire record before him to review, unlike Dr. Alonso. The DDS physician pointed out that [Plaintiff's] allegations of a reduced ability to stand was [sic] part of the complex of objectively unexplained symptoms which Dr. Moldawer referred to as [Plaintiff's] malingering.  (Exhibit 10F/7 and 3F/5). The [DDS] physician, who reviewed the entire medical record suggested slightly more restrictive limitations as to lifting, including a restriction to lifting 20 pounds, occasionally,

9

with occasional balancing and frequent climbing, stooping, kneeling, crouching, and crawling. (Exhibit 10F/3).

(A.R. 23.)

In reviewing the record, it appears that the additional portion of the record alluded to by the ALJ which was available to Dr. Quint, but not to Dr. Alonso, was Dr. Moldawer's opinion; more specifically, his finding of malingering based on the purported lack of "objective findings" to support Plaintiff's pain complaints; Plaintiff's purported drug-seeking behavior; and the lack of knee complaints made to Dr. Moldawer. As the ALJ expressly accepted Dr. Quint's opinion instead of Dr. Alonso's opinion due to the state agency physician's reliance on Dr. Moldawer's malingering opinion, the validity of the AlJ's decision to do so, thus, turns on the validity of Dr. Moldawer's opinion. And, for the reasons articulated by Plaintiff in the JS (at 4-9, 11-12), there are substantial reasons for questioning the validity of Dr. Moldawwer's opinion.

First, as a threshold matter, Dr. Moldewar's assertion that no objective findings exist that might support Plaintiff's complaints of knee and other pain is palpably false. As Dr. Alonso correctly observed, Plaintiff had undergone MRIs and a CT scan prior to the rendering of both Dr. Quint's and Dr. Moldawer's opinions. Those tests established abnormalities in Plaintiff's knees, cervical spine, and

10

1  sinuses.  (A.R. 373-74.)[4]  Such objective findings indicated underlying
2  impairments that reasonably could be expected to cause some level of
3  pain or other symptoms of the types claimed by Plaintiff.  Hence, as Dr.
4  Moldawer's statement was simply wrong,[5] Dr. Quint, who (as the ALJ
5  claimed) had the "entire record before him to review," was wrong to rely
6  on it, as was the ALJ.

7

8      Second, Dr. Moldawer's assertion that Plaintiff was malingering,
9  because he was a drug addict engaged in drug-seeking behavior, lacked
10 any foundation.  The Court has not divined any evidence of record that
11 Plaintiff suffered from opiate dependence as Dr. Moldawer concluded.
12 (A.R. 323.)  Rather, as Dr. Moldawer noted, Plaintiff was taking
13 Vicoprofen and Hydrocodone on a daily basis for pain relief pursuant to
14 the recommendation and prescription of his treating physician.  (*Id.*)
15 Dr. Moldawer's assumption that Plaintiff, therefore, suffered from an
16 "iatrogenic" (physician-induced) "substance dependence on opiates" (*id.*)

17

_____

18      [4]    Indeed, Dr. Moldawer expressly noted (A.R. 324, 326) that he
19 had reviewed medical records showing, *inter alia*:  Plantiff's CT scan of
   his sinuses, indicating pansinusitis (A.R. 326); Plaintiff's March 4,
20 2003 complaint to his treating physician of bilateral knee pain, and the
   physician's recommendation that an MRI be obtained (A.R. 326-27); the
21 March 7, 2003 MRI report, showing that Plaintiff had mediscal tears in
   his right knee (A.R. 327); a May 15, 2003 complaint by Plaintiff to an
22 orthopedic surgical consultant of "constant" pain in both knees, with
   weakness, instability, and locking, and the surgeon's recommendation to
23 first try conservative treatment, to be followed by surgery if Plaintiff
   failed to respond (*id.*); a May 28, 2003 treating physician report,
24 diagnosing Plaintiff's "internal derangement of bilateral knee" (A.R.
   328); and June 19, 2003 treating physician report, diagnosing the same
25 (A.R. 329).

26      [5]    Dr. Moldawer's opinion also was internally inconsistent, as he
   expressly acknowledged that imaging studies had been done reportedly
27 showing that Plaintiff had a herniated disc at C6-7, yet claimed no
   "objective" medical findings had been made.  (A.R. 323.)

28

                                    11

appears to rest only on speculation, rather than substantial evidence. His attendant conclusion that Plaintiff was exaggerating his symptoms due to his drug-seeking behavior was equally speculative.  Accordingly, as this basis of Dr. Moldawer's diagnosis of malingering did not rest on substantial evidence, neither did Dr. Quint's reliance on it nor the ALJ's in turn.

Third, Dr. Moldawer's conclusion that Plaintiff was malingering because he did not state any complaints about his knees is highly questionable in view of the medical evidence of record -- again, evidence that Dr. Moldawer considered and Dr. Quint had before him, according to the ALJ.  Dr. Moldawer reported he was evaluating Plaintiff, as he had earlier in October 2002, only for purposes of a neck injury Plaintiff had sustained on the job.  (A.R. 321.)  His opinion makes clear that his sole job was to evaluate the status of Plaintiff's neck injury for purposes of a worker's compensation claim. Hence, it is hardly surprising that Plaintiff would not have made knee complaints to Dr. Moldawer, particularly as Plaintiff *was* receiving evaluation and treatment of his knee problems from other physicians. Indeed, Dr. Moldawer expressly acknowledged having reviewed medical records documenting Plaintiff's complaints of knee pain and attendant evaluations and treatment.[6]  For Dr. Moldawer to have concluded that

_____

[6]    *See* Footnote 4, *supra*.  *See also* A.R. 225 (March 7, 2003 MRI of Plaintiff's left knee, showing "complete" tear of the posterior horn of the medial meniscus and moderate effusion); 225 (March 7, 2003 MRI of Plaintiff's right knee, showing the same); 212-16 (May 28, 2003 report of Dr. Edwin Stoke, a treating physician, noting Plaintiff's complaints of knee pain, examination findings of bilateral knee tenderness and swelling, and diagnosis of internal derangement of bilateral knees); (A.R. 207) August 6, 2003 report by Dr. Stokes, again noting Plaintiff's

Plaintiff was a malingerer based on Plaintiff's failure to discuss his knee problem with him, under these circumstances, was disingenuous and inappropriate.

In short, Dr. Moldawer's conclusion that Plaintiff was malingering was highly suspect, and the Court finds that it did not constitute substantial evidence.  Hence, by relying on Dr. Quint's opinion, which in turn rested on this suspect "malingering" opinion, as the basis for rejecting Dr. Alonso's opinion, the ALJ did not reject Dr. Alonso's opinion for a legitimate reason supported by substantial evidence.  The ALJ, therefore, erred.[7]  Nguyen, 100 F.3d at 1466.

---

complaints of knee pain, examination findings of knee joint tenderness and swelling, and diagnosis of internal derangement of bilateral knees).  See further A.R. 400 (August 4, 2004 statement by Dr. Robert Rivera, treating physician, diagnosing Plaintiff with bilateral knee pain due to meniscal tears).

[7]    The ALJ also found Plaintiff to lack credibility based, in part, on the "clear evidence in the record of malingering," namely, Dr. Moldawer's finding that Plaintiff was malingering.  (A.R. 22, 24.)  Such reliance was improper, however, for the reasons stated above.  Because this Court has concluded that remand is appropriate, the Court has not separately addressed Plaintiff's fourth issue, complaining of error in the ALJ's credibility assessment.  However, as the ALJ's reliance on the suspect Moldawer finding calls into question the propriety of the ALJ's credibility finding, the Court believes that, on remand, the ALJ should reevaluate the question of Plaintiff's credibility.  Moreover, the ALJ should reconsider his findings that Plaintiff lacked credibility, because he:  exaggerated his hearing loss, given that he could "hear normal conversations in the hearing room"; was motivated to lie regarding the extent of his disability due to his worker's compensation claim, and stopped seeking the same level of treatment once his claim was resolved in 2004; flew twice to Central America, which belies his claims of dizziness, vomiting, etc.; and was noncompliant with his medication.    It appears that these stated reasons for rejecting Plaintiff's testimony were not legitimate. (See A.R. 42-43 -- Plaintiff flew only because his father was ill and to see a doctor; 287, 306 -- Plaintiff had significant hearing loss in one ear, but only slight hearing loss in the other;  288 -- the only instance when Plaintiff was noncompliant with medication; 395-416 -- medical records showing monthly treatment between May and December 2004.)

1  *Dr. Rivera's Opinion:*

2

3       Dr. Rivera, an internal medicine physician, treated Plaintiff from

4  May 11, 2004 through November 9, 2004.  (A.R. 396-407.)  In regard to

5  Plaintiff's work limitations, Dr. Rivera opined that Plaintiff:  could

6  lift and/or carry less than ten pounds occasionally but not frequently;

7  could stand and/or walk for less than two hours in an eight-hour

8  workday; could sit for less than six hours in an eight-hour workday;

9  required the option to shift positions at will from sitting, standing,

10 or walking; required the option to take ten minute breaks for every ten

11 minutes of work; would be absent from work more than three times a

12 month; was limited in his ability to push and/or pull with his upper and

13 lower extremities; could climb, crouch, and crawl occasionally; could

14 never balance or kneel; was limited in his ability to reach in all

15 directions, handle, finger, or feel; was limited in his ability to hear

16 with his right hear; and was limited in his ability to work in

17 environments with loud noises, vibrations, odors, chemical gases, or

18 fumes.  (A.R. 401-02.)  In rejecting Dr. Rivera's findings, the ALJ

19 stated, in pertinent part:

20

21       Even though [Plaintiff] was shown to be malingering in

22     his continued pain complaints, Dr. Rivera, purportedly a

23     treating physician, stated that [Plaintiff] would never be

24     able to lift as much as 10 pounds, stand as long as two hours,

25     sit as long as six hours, or work more than "10 min. at a

26     time." (Exhibit 15F/7).  I completely reject this assessment

27     because it is contrary to *all* of the other objective medical

28

14

1   evidence of record.  The doctor's report was prepared in
2   August 2004 in obvious contemplation of [Plaintiff's]
3   disability hearing, and without any citing of objective
4   medical signs and findings to support it.  The doctor has
5   clearly based his opinion solely upon [Plaintiff's] alleged
6   symptoms.  He either ignored the entire medical record, or had
7   no access to it.  Either way, his opinion is nothing more than
8   disingenuous speculation and not worthy of any appreciable
9   weight.

11  (A.R. 23.)

13      As noted above, the ALJ adopted the opinion of Dr. Quint, instead
14  of Dr. Rivera, in determining Plaintiff's residual functional capacity.
15  (A.R. 23.)  As this opinion by a nonexamining physician contradicted
16  that of a treating physician, the ALJ could reject Dr. Rivera's opinion
17  on this basis only by setting forth specific, legitimate reasons based
18  on substantial evidence in the record.    Ramirez, 8 F.3d at 1453-54.

20      For the reasons set forth above, the ALJ's rejection of Dr.
21  Rivera's opinion -- because Plaintiff "was shown to be malingering" --
22  was not legitimate.  Moreover, the ALJ's other stated reasons for
23  rejecting this treating physician opinion also were erroneous.

25      The ALJ's suggestion that Dr. Rivera's opinion was unreliable,
26  because his report was "prepared in August 2004 in obvious
27  contemplation" of Plaintiff's disability hearing, was not a legitimate

28                                  15

reason for rejection of the opinion.  The record contains no evidence indicating that Dr. Rivera embellished his assessments of Plaintiff's limitations in order to assist Plaintiff with his DIB claim.  It is just as faulty to assume, as the ALJ did, that Dr. Rivera was motivated to lie simply because he had a treating relationship with a claimant, as it would be to assume that a consultative examiner or state agency reviewing physician is predisposed to skew his or her findings in a manner harmful to the claimant simply because it financially benefits the Commissioner or state disability agency to deny disability claims. *See* Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998)(finding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).

In addition, the ALJ erred in concluding that Dr. Rivera failed to cite any objective medical findings to support his opinion and "clearly based his opinion solely upon [Plaintiff's] alleged symptoms." (A.R. 23.)  Although Dr. Rivera may have based his opinion, in part, on Plaintiff's subjective pain allegations, he also noted clinical findings to support his functional capacity determination.  (A.R. 400.)  In particular, Dr. Rivera noted:  Plaintiff's lateral head movement was limited to 60 degrees to the right and 75 degrees to the left; his neck/trapezius muscle was tender; and he had decreased sensation to pinprick in some parts of his right forearm.[8]  (*Id.*)  Therefore, this was not a legitimate reason for rejecting Dr. Rivera's opinion.

---

[8]     Dr. Rivera also noted that Plaintiff had cervical disc herniation and meniscal tears in both of his knees.  (A.R. 400.)  As noted earlier, the record contains pre-existing MRI results that support Dr. Rivera's diagnoses.  (A.R. 220, 225-26, 301-02.)

1       Finally, the ALJ's conclusory statement that Dr. Rivera's opinion

2 was "contrary to *all* of the other objective medical evidence of record"

3 was not specific.  (A.R. 23); *see* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421

4 (9th Cir. 1988)(holding that the ALJ did not meet his burden of

5 articulating specific, legitimate reasons for rejecting treating

6 physicians' opinions by stating that the opinions were contrary to the

7 "preponderant conclusions" mandated by objective findings).

8

9       The ALJ's reasons for rejecting Dr. Rivera's opinion were neither

10 specific nor legitimate, and were not supported by substantial evidence

11 in the record.  Moreover, as discussed above, the ALJ's rejection of Dr.

12 Alonso's opinion was error.  Accordingly, this case must be remanded for

13 further administrative proceedings.  On remand, the ALJ shall re-

14 evaluate both Dr. Alonso's opinion and Dr. Rivera's opinion in

15 accordance with the requisite legal standard.

16

17    **B.**   <u>**The ALJ Did Not Err By Rejecting The Opinion Of A Dentist**</u>

18         <u>**Regarding The Effect Of Plaintiff's TMJ Disorder On His**</u>

19         <u>**Ability To Work**</u>.

20

21       The Commissioner requires evidence from "acceptable medical

22 sources" in order to establish whether a claimant has medically

23 determinable impairments.  20 C.F.R. § 404.1513(a).  "Acceptable medical

24 sources" include licensed physicians, psychologists, optometrist, and

25 podiatrists, as well as qualified speech-language pathologists.  20

26 C.F.R. § 404.1513(a)(1)-(5).  However, the Commissioner may consider

27 observations by "other sources," such as medical sources who are not

28

17

listed as "acceptable medical sources," to show the severity of the claimant's impairments and how they affect the claimant's ability to work.  20 C.F.R. § 404.1513(d)(1).  Opinions from "other sources" may be given less weight than those from "acceptable medical sources."  <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996).

On July 8, 2003, Dr. Edward Stokes, Plaintiff's treating physician, diagnosed Plaintiff with TMJ syndrome.[9]  (A.R. 208.)  Dr. Stokes referred Plaintiff to Dr. Mayer Schames, a dentist.  On September 22, 2003, Dr. Schames completed a discharge report concerning Plaintiff's complaints of facial and jaw pain.  (A.R. 188-92.)  Dr. Schames noted that an Ultrasonic Doppler Analysis verified internal derangements of the left TMJ upon translational and lateral movements of the mandible.  (A.R. 188.)  He recorded that Plaintiff:  experienced a speech dysfunction where, due to facial muscular spasms, he had an indistinct articulation, as well as slurred speech and hoarseness; found masticating hard food to be difficult, due to this causing an increase in facial pain; found that biting and occlusion were off due to facial muscular spasms; and found that stress caused him to clench or grind his teeth during the night, consequently causing pain.  (A.R. 188-89.)

Dr. Schames determined that, because Plaintiff suffered from myofascial pain of the facial musculature, Plaintiff should avoid activities that could aggravate the musculature.  (A.R. 190.)

---

[9]    A review of Plaintiff's medical records, conducted by Dr. Alfred Roven, indicates that Plaintiff had been diagnosed with TMJ disorder as early as August 1, 1999.  (A.R. 365.)

Specifically, he opined that:  Plaintiff was restricted from cold temperatures and environments such as refrigeration coolers and air conditioning, as this would increase myofascial pain; Plaintiff was restricted from pushing, pulling, and lifting objections of more than 10 pounds, because such activities "tend[ed] to cause people to clench the teeth and/or tighten their facial musculature while performing those activities"; and consideration should be given to emotional stress that could cause an increase in myofascial tension and increase the activities of clenching and grinding (*e.g.*, avoid contact with the public, co-workers, or a work environment that could give rise to nervousness, irritability, and tension).  (A.R. 191.)

The ALJ rejected Dr. Schames's opinion by stating:

> I reject the isolated opinion of a dentist, Dr. Schames, that [Plaintiff] is restricted from "cold temperatures and environments such as refrigeration coolers and air conditioning" which is [sic] present in almost all work environments according to the VE [vocational expert]. (Exhibit 1F/7).  No other doctor who examined or treated [Plaintiff] suggested such a restriction. (Exhibits 2F[,] 3F, 5F, 7F, 11F/4, and 15F).  There is nothing to suggest that Dr. Schames, a dentist, is an acceptable medical source under the regulations and I cannot give his opinion significant weight especially when it is in substantial disagreement with the other medical evidence of record which is from acceptable medical sources. (20 CFR 404.1513).  [Plaintiff's] complaints

about his jaw have been intermittent and it was not a major complaint at the hearing.  This opinion was rendered in the context of an adversarial Workers' Compensation claim which significantly detracts from its objectivity.  Dr. Schames did not put forth sufficient objective medical justification for his suggested limitation and I find it, at best, speculative and unworthy of serious consideration.

(A.R. 24.)

Plaintiff acknowledges that Dr. Schames was not identified as a "medical source" under the Code of Federal Regulations.  However, Plaintiff contends that the ALJ erred in failing to given any weight to Dr. Schames's opinion concerning the severity of Plaintiff's TMJ disorder and his assessments of Plaintiff's work-related limitations stemming from the impairment.  In particular, Plaintiff argues that the ALJ failed to identify any other medical evidence in the record that contradicted Dr. Schames's opinion.  (JS at 12-13.)

As Dr. Schames was deemed an "other source," the ALJ could have accorded his opinion "less weight than opinions from acceptable medical sources."  *See* <u>Gomez</u>, 74 F.3d at 970-71.  Indeed, the governing regulations contain "no specific guidelines for the weighing of opinions from other sources." *Id.* at 970.  The ALJ was not required to accept or specifically refute Dr. Schames's opinion under the Regulations or Ninth Circuit precedent.

20

Plaintiff principally complains that the ALJ erred by concluding that Dr. Schames's imposition of a limitation that Plaintiff is precluded from working in air conditioned environments was not consistent with the medical evidence of record from acceptable medical sources. The Court does not find error in the ALJ's conclusion. Based on its review of the records, it appears that no acceptable medical source opined to any similar limitation, much less one this extreme.[10] Thus, it was not inaccurate for the ALJ to label Dr. Schames's opinion in this respect to be in disagreement with the acceptable medical source opinions.[11] Moreover, contrary to Plaintiff's assertion, the ALJ was not required to identify which acceptable medical source opinions did not contain the extreme limitation imposed by Dr. Schames. In any event, none of them did.[12]

Moreover, Plaintiff did not claim in his DIB application that his TMJ syndrome constituted an impairment affecting his ability to work (A.R. 117) and the ALJ did not find that Plaintiff's TMJ syndrome constitutes a "severe" impairment for purposes of his ability to work

---

[10]   The ALJ correctly observed that the vocational expert opined that air conditioning or other systems of cooling the work environment are present in almost all relevant employment situations in the Los Angeles area, and that a preclusion from exposure to such effectively ruled out any jobs a person with Plaintiff's limitations otherwise might be able to perform.   (A.R. 56-57.)

[11]   While Plaintiff asserts that Dr. Schames's restrictions were "not contradicted" by any medical source in the record (JS at 13), Plaintiff fails to identify any medical source who opined that the air conditioning limitation should be imposed.

[12]   The Consultation Request provided to Dr. Quint expressly noted that Dr. Schames had opined as to "numerous severe limitations resulting from dental condition" (A.R. 377); however, Dr. Quint did not impose any limitations resulting from Plaintiff's TMJ syndrome (A.R. 378-85).

21

(A.R. 20-21).  Significantly, Plaintiff has not challenged that finding. The Court finds no error in the ALJ's rejection of the limitations imposed by Dr. Schames based on a condition not found to constitute an impairment for purposes of the Social Security Act.

C.    **The ALJ May Need To Obtain Further Testimony From A Vocational Expert.**

In concluding that Plaintiff can perform such jobs as product packer, assembler, and gluer, the ALJ relied on the testimony of the vocational expert, which, in turn, was based on a hypothetical premised on the limitations found by Dr. Quint, rather than the restrictions found by Dr. Alonso and/or Dr. Rivera regarding Plaintiff's ability to walk and stand in an eight-hour workday.  (A.R. 24, 26.)  Plaintiff complains that the ALJ's hypothetical to the vocational expert was incomplete, because it failed to include the limitations imposed by Dr. Alonso.[13]

"If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value."  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  Thus, in posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations.  Embrey, 849 F.2d at 422-24.

---

[13]    Plaintiff also complains that the hypothetical was incomplete without the limitations imposed by Dr. Schames.  For the reasons set forth in Section B, the Court rejects this argument.

22

For the reasons set forth above, the ALJ erred in his treatment of the opinions of Drs. Alonso and Rivera as they pertain to Plaintiff's residual functional capacity, and this case must be remanded so that the ALJ can re-assess those opinions.  Based on that re-assessment, the ALJ may need to clarify his findings with respect to Plaintiff's residual functional capacity.   Should the ALJ's assessment of Plaintiff's residual functional capacity change in any respect, the ALJ may need to elicit testimony from a vocational expert regarding the availability of jobs for a person with the revised residual functional capacity.

**D.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See,*

23

1  *e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ

2  erred by discounting treating physicians' opinions, remand for further

3  proceedings is appropriate if enhancement of the record would be

4  useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir.

5  1989)(remand appropriate to remedy defects in the record).

6

7                              **CONCLUSION**

8

9      Accordingly, for the reasons stated above, IT IS ORDERED that the

10  decision of the Commissioner is REVERSED, and this case is REMANDED for

11  further proceedings consistent with this Memorandum Opinion and Order.

12

13      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

14  copies of this Memorandum Opinion and Order and the Judgment on counsel

15  for Plaintiff and for Defendant.

16

17      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

18

19  DATED: March 22, 2007

20                              _____
                                          /s/
21                                MARGARET A. NAGLE
                          UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

                                    24